# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:17-CR-00330-SRB |
| PRESTON L. GILLAM, | ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT PRESTON GILLAM TO SUPPRESS EVIDENCE

COMES NOW Defendant, Preston Gillam, and offers the following Memorandum to this Court in Support of Defendant's Motion to Suppress Evidence filed:

### BACKROUND

Based upon the discovery provided to Defendant by the Government, it is alleged that on October 1, 2017 at 6:21 a.m. Officer Bloss, a member of the Jackson County Sheriff's Department, observed a vehicle commit a traffic violation, to-wit: a Failure to Maintain a Single Lane. Based upon that observation this Officer believed that the Driver was possibly impaired and therefore a traffic stop was initiated.

It is further alleged that Defendant was the sole occupant of the vehicle and at that time Defendant possessed a large sum of cash and that his eyes were red, glossy and that his mannerisms appeared to be lethargic and dazed. Defendant, after being informed of the reason for the traffic stop, indicated that he was occupied by his cellular telephone. This Officer then requested identification and he observed that Defendant's mannerisms in locating same were slow and

1

clumsy.

After a computer check of Defendant, which indicated that Defendant possessed valid, limited driving privileges and no other pertinent information was provided, this Officer then returned to the vehicle and observed a blue bank deposit bag on the center counsel and a green hard case on the passenger side floorboard, which the Defendant apparently explained was a money counter. Nothing in the discovery materials indicated that Officer Bloss observed the odor of alcohol or any controlled substance emanating from Defendant or from the vehicle's passenger compartment. While this exchange was occurring Deputy Cole, an assist officer previously requested by Officer Bloss, arrived on the scene.

After Officer Cole arrived on scene, Officer Bloss asked Defendant to exit the vehicle and Officer Bloss indicates that Defendant's eyelids were heavier and that his mannerisms were slower and more drastic, and that Defendant appeared nervous. Based upon these claimed observations Officer Bloss then requested consent to search the vehicle and that Consent was refused by Defendant. Officer Bloss, based upon the above and after escorting Defendant to the rear of the vehicle, requested that a canine unit respond to the area.

An additional officer, Deputy Watts, also arrived on scene and a Sgt. Edwards was contacted and informed of the situation; thus, this traffic stop investigation now involved or will soon involve five different officers. While awaiting the K-9 unit is claimed that Defendant continued with his behaviors and mannerisms indicated above and Defendant indicated that he needed an attorney.

Because Deputy Bloss vehicle did not house an operable video recording system Deputy Watts then moved his vehicle and began recording the events with his patrol car camera and audio

2

system.1  Sometime thereafter Deputy Poslehwait, the K-9 officer, arrived on scene to conduct a sniff search of the vehicle.  It is claimed that the canine alerted on the vehicle, which then triggered Defendant becoming belligerent and aggressive and Defendant was then placed in handcuffs.2

Thus, up to the time Defendant was handcuffed, although Officer Bloss originally suspected impairment, no filed sobriety testing was conducted, nothing noted that could possibly denote impairment other than Defendant's eyes, no information provided by dispatch that would warrant further detention, and no steps taken whatsoever by Officer Bloss regarding his routine tasks associated with the basis of the original traffic incident.  It was the dog's alert and Defendant's claimed mannerisms after the alert that Officer Bloss relies upon in justifying probable cause to begin a search of the vehicle.

A search of Defendants person was conducted, and it is claimed that a small clear baggie containing blue pills was located in Defendant's wallet.   At no point in time were any standardized field sobriety tests administered, no Alcohol Influence Report authored, no breath alcohol test administered, no blood sample secured, and no traffic ticket issued in connection with this claimed traffic violation and potential impairment.

Based solely upon the canine sniff search and alert Deputy Bloss and Deputy Cole began a search of the vehicle, which then resulted in the discovery of currency in the blue bank deposit bag and white crystalline substance.  The Officers then requested that the vehicle be towed to the

---

1 Defendant has requested a copy of the video and audio recording from the Government, but Defendant was informed that same no longer exists.
2 The discovery is unclear as to when the canine alert occurred and therefore how much time elapsed during the traffic stop as same is not described in the discovery and, again, the video that would likely record the time of such an alert does not exist.

Jackson County Sheriff Office for further search. The Officers then escorted the vehicle being towed to the Sheriff's Office and the vehicle was searched further and the items set forth in Defendant's Motion to Suppress Evidence were discovered. At no time did law enforcement seek and/or receive a search warrant to search the vehicle roadside or while at the Jackson County Sheriff's Office.

## MEMORANDUM OF LAW

The primary question presented to this Court is whether the continued detention of Defendant without the officer conducting the permitted routine tasks associated with the traffic stop itself was permissible under the Fourth Amendment following the initial traffic stop for a minor traffic violation so that the K-9 unit can respond to the location. Defendant considering the presented circumstances submits that such continued detention without steps being taken to perform routine tasks associated with the traffic stop does, in fact, violate the Fourth Amendment and therefore Defendant's Motion to Suppress Evidence must be sustained.

Defendant recognizes that if a police officer observes a minor traffic violation it does provide the necessary probable cause to initiate a traffic stop of that same vehicle. United States v. Mendoza, 677 F.3d 822, 827 (8th Cir. 2012). Furthermore, after the traffic stop is initiated the police officer is justified to complete tasks related to the traffic stop itself including, but not limited to, a computerized check of the vehicle's registration, the operator's driving privileges and preparation of any citation or warning. United States v. Quintero-Felix, 414 F.3d 563, 567 (8th Cir. 2013). However, after the routine tasks are completed the driver must be permitted to leave and any prolonged detention is unreasonable unless new facts are discovered giving rise to reasonable suspicion of other criminal activity. United States v. Flores, 474 F.3d 1100, 1103 (8th

4

Cir. 2007). In other words, while the initial seizure may be justified it can be then transformed into an unlawful seizure if it is prolonged beyond the time reasonably related to the traffic violation observed. Illinois v. Caballes, 543 U.S. 405, 407 (2005).

In Rodriguez, 135 S.Ct. 1609, 1612 (2015), the United States the Supreme Court was confronted with the issue of a prolonged traffic stop solely to permit a canine search of a vehicle. In that case the Supreme Court expressly held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Id.

In Rodriguez the police officer observed a minor lane violation, like the case at bar, and a traffic stop was initiated at 12:06 a.m. Id. The police officer then requested the driver's license, registration and proof of insurance and invited the driver to accompany the police officer to the patrol car. Id. at 1613. However, the driver refused the officer's invitation to visit the patrol car and waited in his own vehicle. Id.

At 12:27 a.m. the police officer issued a written warning to the driver and returned all documentation provided by the driver and therefore the traffic stop was completed. Id. Nonetheless, the police officer did not consider the driver free to leave the area and requested permission to conduct a canine sniff search. Id. The driver objected to the dog sniff search and following said objection the police officer ordered the driver out of the vehicle and to remain at the scene near the patrol car. Id. At 12:33 a.m. another officer arrived on scene in the initial police officer, who was a canine officer, conducted a sniff search of the vehicle where the drug dog apparently alerted to the presence of drugs. Id. Ultimately a large bag of methamphetamine was located in the vehicle, which was discovered after the seven or eight minutes prolonged

5

detention.  Id.

Initially the Court described a traffic stop as being reasonable in time under the Fourth Amendment when same is limited to addressing the basis for the traffic stop itself.  Id. at 1614. *citing* Caballes, 543 U.S. at 407.  Put another way, the officer's "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are-*or reasonably should have been*-completed."  Id. (emphasis added).  In fact, law enforcement may not delay conducting the routine tasks associated with the traffic stop in such a manner that prolongs the traffic stop itself unless a new basis for reasonable suspicion arises.  Id. at 1615 *citing* Muehler v. Mena, 544 U.S. 93, 101 (2005).

The Court also recognized that, unlike a routine traffic stop, a dog sniff search's purpose is to detect other criminal offenses not related to the original traffic offense.  Id. at 1615.  Thus, a dog sniff does not correlate to the ordinary traffic inquiries made during a traffic stop and "[o]n-scene investigation into other crimes, however, detours from that mission."  Id.  Thus, the legality of the detention and the resulting dog sniff search is whether the sniff search adds additional time to the traffic stop itself.  Id. at 1616.  (The Sixth Circuit did recognize the Court's holding in Rodriguez in United States v. Bah, when it held that the Court's decision stated "that, absent reasonable suspicion, police officers cannot prolong a traffic stop-even for 7 to 8 minutes-solely to conduct a dog sniff."  794 F.3d 617, 629 (6th Cir. 2015).

Ultimately the Court remanded the matter to the Court of Appeals to resolve the issue of whether additional reasonable suspicion existed to justify the continued detention beyond the completion of the traffic violation.  Following remand, the Eighth Circuit upheld the denial of the Motion to Suppress because at the time of the traffic stop itself the controlling law permitted a police officer to briefly delay the traffic stop without invoking the Fourth Amendment's

exclusionary rule, 799 F.3d 1222, 1224 (8th Cir. 2015), and, however, the Eighth Circuit did not rule upon whether additional reasonable suspicion existed in that matter.

In United States v. Evans, 786 F.3d 779 (9th Cir. 2015), the Ninth Circuit addressed the prolongation of a normal traffic stop in the context of Rodriguez. In that case a traffic stop was initiated at 7:09 p.m. due to an unsafe lane change and following another vehicle too closely. Id. at 782. At the outset of the traffic stop the officer requested the driver's license and vehicle registration and at that time the officer claimed that there was a strong odor of methamphetamine emanating from the passenger compartment of the vehicle. Id. Some four minutes after the traffic stop was initiated the officer indicated to the driver that he would not issue a traffic citation but that a computerized check would be conducted to determine whether any outstanding warrants existed. Id. The computerized check indicated that the driver possessed a valid driving privileges and the vehicle was properly registered at 7:20 p.m. Id.

Only after the initial computerized check showing the proper privileges and registration did the officer request "an ex-felon registration check." This check indicated that the driver had a prior felony of arrest record and whether the driver was properly registered at the address provided to the officer by the driver. Id. at 783. While this registration check was conducted the conversation was had regarding the driver's itinerary and where he stayed while traveling and other issues unrelated to the traffic stop itself. Id. At 7:28 p.m. the ex-felon registration check was completed and resulted in information at the driver was properly registered as an ex-felon. Id. After receiving that dispatched information, the officer returned to the driver the license and registration and indicated that the driver was free to leave. Id.

The officer then began asking the driver additional questions about contraband and whether

7

same was in the vehicle to which the driver indicated there was no such items found therein. Id. The officer then requested consent to search the vehicle, which consent was refused by the driver. Id. It was at this time that the officer indicated that a canine sniff search would be conducted on the exterior the vehicle to which the canine alerted at 7:33 p.m. Id. at 783-784. A vehicle search was then conducted that resulted in the discovery of methamphetamine. Id.

The district court granted the drivers motion to suppress evidence because the delay in the completion of the traffic stop and seizure of the driver violated the Constitution and therefore the continued detention was unlawful. Id. An appeal was taken by the Government, but the appeal was delayed pending the United States Supreme Court decision in Rodriguez.

The Ninth Circuit, based upon Rodriguez, held that the officer's investigation and requesting an ex-felon registration check violated the Fourth Amendment as well as the subsequent dog sniff search unless reasonable suspicion was developed independently. Id.

In so holding the Evans Court stated that the ex-felon registration check, which delayed the traffic stop by eight minutes, was completely unrelated to the purpose of the traffic stop and therefore violated the Fourth Amendment when it added time to the traffic stop itself and the officer's inquiries while awaiting the registration check were completely unrelated to the traffic violation in question. Id. at 786-787. Thus, it was deemed a Fourth Amendment violation when the officer "prolonged the traffic stop to conduct" the ex-felon registration "unless he had independent reasonable suspicion justifying this prolongation." Id. at 787. The same rationale was employed regarding the dog sniff search, absent independent reasonable suspicion, and same was held to be unconstitutional as well. Id. at 788.

In United States v. Gorman, 859 F.3d 706 (9th Cir. 2017) the Court again addressed the

8

constitutionality of prolonging a routine traffic stop. In that the case a traffic stop was initiated because of a purported lane violation. Id. at 710. The information provided by the driver to the officer, in the officer's opinion, appeared suspicious. Id. The officer then conducted a computerized check that resulted in information that the driver had no prior arrests and no outstanding warrants. Id. at 711. The officer, at the time of the computerized check, also requested that a canine unit respond to the location, but he was informed that no drug dog was available in that area. Id.

The officer then conducted a non-routine record check that resulted in additional time being added to the traffic stop itself. Id. After twenty minutes elapsed during the traffic stop the officer then returned to the vehicle and the officer handed to the driver the documentation previously provided to the officer. Id. The officer then engaged in further questioning and ultimately requested consent to the search the vehicle and that consent was refused. Id.

Because the initial officer remained of the belief that the vehicle contained a large sum of cash the officer then radioed another law enforcement department suggesting that vehicle be intercepted. Id. at 712.

The second officer from the neighboring department indicated that a second traffic stop was initiated based upon a traffic violation. Id. The second officer requested and received the driver's license and the vehicle's registration. Id. The officer then initiated another computerized record check. Id.

While awaiting the computerized records check the second officer returned to the vehicle and advised the driver that the roadside detention would continue until the records check was returned. Id. at 712-713. The second officer then asked if the driver objected to a dog sniff

search as a dog was readily available. Id. at 713. The driver did object to the sniff search but despite his objection the second officer escorted the driver from the vehicle and prepared the canine for the search. Id. The canine alerted to vehicle and based upon that alert the officer requested a search warrant to search the vehicle. Id. After the canine alert and application for a search warrant was made the computerized check revealed that the driver had no prior arrests and no warrants; the same information the first officer received. Id. The second officer's request for a search warrant was granted based upon the canine alert after approximately twenty minutes from the initiation of the traffic stop and the vehicle was then taken to the sheriff's office to conduct a search. Id. The search resulted in the discovery of a substantial amount of currency that was the object of the civil forfeiture giving rise to the litigation.3 Id.

The Ninth Circuit first held that the traffic stop prolonged by the first officer violated the Fourth Amendment when a non-routine record check was conducted. Id. at 714. The traffic stop and subsequent dog sniff search then equally violated the Fourth Amendment because it was the result of "an unbroken causal chain of events." Id. In so holding the Ninth Circuit made citation to Rodriguez and stated that "[t]he Supreme Court has made clear that traffic stops can last only as long as is reasonably necessary to carry out the 'mission' of the stop, unless police have an independent reason to detain the motorist longer." Id. Furthermore, any traffic stop investigation is unlawful if it is prolonged due to the officer conducting an investigation unrelated to the traffic stop itself. Id. Thus, "[n]on-routine record checks and dog sniffs are paradigm examples of 'unrelated investigations'" that are prohibited absent independent reasonable suspicion. Id. at 715. Put another way, absent independent reasonable suspicion, investigations

---

3 No criminal charges were issued against the driver.

unrelated to the roadside detention, i.e. investigations into ordinary criminal wrongdoing, are unlawful. Id. *citing* Rodriguez, 135 S.Ct. at 1615. Ultimately the Evans Court found that the Fourth Amendment was violated and therefore the forfeiture of the currency improper discovered following the second traffic stop and issuance of the search warrant as fruit of the poisonous tree doctrine. Id. at 719. See also United States v. Peralez, 526 F.3d 1115, 1121 (8th Cir. 2008) *citing* Caballas, 543 U.S. at 408 ("[i]f extended seizure 'enabled the dog sniff to occur' suppression is proper").

Applying the above-cited holdings Defendant does submit to this Court that the officer's lack of investigation related to impairment or any other investigation related to the traffic stop itself unconstitutionally prolonged the traffic stop itself. Therefore, the delay, including the failure to return documentation provided to Officer Bloss by Defendant after the record check was conducted, which permitted the arrival of the canine unit to the scene of the traffic stop, resulted in any subsequent investigation equally unconstitutional as fruit of the poisonous tree.

Respectfully submitted,

FLANAGAN & PEEL, P.C.


          /s/ Terry Flanagan
Terry J. Flanagan #21648
John W. Peel #49637
133 South 11th Street, Suite 350
St. Louis, Missouri 63102
Ph. (314) 621-3743
Fax. (314) 231-9552
*Attorney for Defendant*


## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2018, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court Electronic Filing system upon all counsel.

          /s/ Terry Flanagan