IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Crim. No. 4:17-cr-00330-SRB-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRESTON L. GILLAM, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR COMPASSIONATE RELEASE**
**DUE TO DANGER FROM THE CORONAVIRUS**

COMES NOW the Defendant herein, Preston Gillam, by and through undersigned counsel David A. Kelly and the law firm of Kelly, Symonds & Reed, LLC, and hereby moves this Honorable Court for an order granting his Motion for Compassionate Release pursuant to 18 U.S.C. §3582(c) due to the substantial risk to himself and the community from the current COVID-19 pandemic. In support of the motion, Mr. Gillam states as following:

Pursuant to 18 U.S.C. §3582(c)(1)(A)(I),

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS §3553(a)] to the extent that they

1

are applicable, if it finds that—

(I) extraordinary and compelling reasons warrant such a reduction.

Id.

Exhaustion: On April 22, 2020, Mr. Gillam requested compassionate release in writing to the Warden of FCI Forrest City through his case manager Mr. Booth. Mr. Gillam was notified on or about May 5, 2020 that his request for compassionate release had been denied and that no further action would be allowed and that no appeal from the decision was possible. Mr. Gillam never received a formal denial letter or notice from the Warden at FCI Forrest City or from anyone else employed by the Bureau of Prisons. Thirty days have now elapsed since Mr. Gillam made his administrative request as required by law.

If Mr. Gillam can somehow be said to have not yet exhausted his administrative rights within the Bureau of Prisons regarding compassionate release, he submits that the current coronavirus situation has created a situation whereby said requirement has been waived by various courts so that inmates can be released to protect their well-being. In United States v. Sawicz, 2020 U.S. Dist. LEXIS 64418 (E.D.N.Y. Apr. 10, 2020), the court found that "[t]he COVID-19 outbreak at FCI Danbury, combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension, justifies waiver here [of the exhaustion/waiting period].... I agree with the defendant that the risk of serious illness or death that he faces in prison constitutes an extraordinary and compelling reason militating in favor of his release." In United States v. Almontes, 2020 U.S. Dist. LEXIS 62524 (D. Conn. Apr. 9, 2020), the court found as follows:

> [A] combination of factors convinces me that there are extraordinary and compelling reasons to reduce Almonte's sentence. Almonte's medical

2

> condition may alone amount to an extraordinary and compelling reason to do so because his cervical myelopathy is a serious physical condition that will soon leave Almonte unable to care for himself in prison. If Almonte does not get the surgery he needs, he will not recover from his condition. If he remains in BOP's custody, Almonte will not get the surgery quickly enough. The surgery has already slipped through the cracks for a year and a half, and there is little chance for any improvement, given the rise of COVID-19 and concomitant logistical complications. Further, Almonte's rehabilitation from his former life of crime has been total, and he has a supportive network of family ready to help him reintegrate into society. Finally, because of changes in the law that did not affect him, Almonte's more culpable co-conspirators have been afforded leniency while Almonte has not.

Id. Similarly, in Miller v. United States, 2020 U.S. Dist. LEXIS 62421 (E.D. Mich. Apr. 9, 2020), the court waived the exhaustion/waiting period under §3582(c)(1) as defendants with underlying medical conditions who have a higher risk of falling severely ill from COVID-19 should be granted compassionate release in order to avoid a "lethal decision." See also United States v. Gentille, 2020 U.S. Dist. LEXIS 62680 (S.D.N.Y. Apr. 9, 2020).

Mr. Gillam submits that extraordinary and compelling reasons justify his immediate release in this matter. Specifically, the heightened risk to Mr. Gillam due to the coronavirus pandemic justifies his request for compassionate release. Mr. Gillam submits that he is at risk of contracting COVID-19, also known as coronavirus, should he remain incarcerated in this matter, which could result in a debilitating illness. Complications from coronavirus include pneumonia in both lungs, organ failure in several organs, and death.[1] As this Court is no doubt aware, coronavirus has been labeled a pandemic by the World Health Organization.[2] Mr. Gillam submits that the health risk to himself and the community is incredibly heightened in this pandemic given the conditions in the federal jails, where it is impossible to practice safe social

---

[1] https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963
[2] https://www.theguardian.com/world/2020/mar/11/who-declares-coronavirus-pandemic

distancing and proper hygiene.

Physical/Medical Conditions: Mr. Gillam suffers from a number of significant and life-threatening medical conditions. PSR at ¶¶ 58-63. His conditions include bowel perforations, respiratory failure and anemia, in addition to facial trauma and spinal stenosis, conditions that result in numbness in the extremities, balance difficulties, pain and the inability to breathe normally.[3] Mr. Gillam continues to suffer pain and difficulty from these conditions. Id. Mr. Gillam has previously undergone surgery for facial fractures and had facial reconstructive surgery including artificial implants. Id. He suffers from respiratory difficulty as a result and is at great risk should he contract COVID-19.

As set forth in United States v. Perez, 2020 U.S. Dist. LEXIS 57265 (S.D.N.Y. April 1, 2020), compassionate release is available to those inmates who have had treatments for pain delayed due to the COVID-19 pandemic. Mr. Gillam also suffers from post-traumatic stress disorder, generalized anxiety disorder, and panic disorder, conditions unlikely to improve under the stress of the coronavirus pandemic. PSR at ¶¶ 58-63. As a result of his conditions, Mr. Gillam submits that he is at higher risk of suffering severe illness should he contract the coronavirus.[4] This state of affairs necessitates compassionate release.

Federal inmates have already tested positive for the coronavirus.[5] Further, a federal inmate became recently became the first inmate to die due to the coronavirus, a result that is

---

[3] https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fpeople-at-higher-risk.html

[5] https://www.usatoday.com/story/news/politics/2020/03/22/first-federal-inmate-tests-positive-coronavirus-new-york/2893959001/

rapidly repeating itself.⁶ As of April 30, 2020, there are 2,338 federal inmates and 196 BOP staff who have confirmed positive test results for COVID-19 nationwide, with 57 federal inmates already dying from the illness.⁷ In addition, the facility in which Mr. Gillam is incarcerated is the subject of an outbreak of COVID-19 currently. See

(https://www.wmcactionnews5.com/2020/05/12/more-than-inmates-test-positive-covid-arkansas-prison/).

The Attorney General has issued a memo to the Director of the Bureau of Prison to release those inmates at increased risk from contracting the coronavirus and suffering from underlying health issues that could endanger the defendant.⁸ Accordingly, in order to be protected from this health menace, Mr. Gillam requests that he be granted compassionate release due to the coronavirus pandemic. These conditions have necessitated expanded release of inmates.⁹ Due to these conditions, Mr. Gillam submits that he should be released from incarceration.

Mr. Gillam submits that his offense of conviction in this matter was for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A). The facts of this case are as follows. On October 1, 2017, Jackson County Sheriff's Department Deputy Bloss conducted a traffic stop of a Ramp pickup truck at eastbound Interstate 70 and Lee's Summit Road in Independence, Missouri. The reason for the stop was for careless driving and suspicion of impaired driving.

Mr. Gillam was the driver and sole occupant of the vehicle. Mr. Gillam was holding a

---

⁶https://www.foxnews.com/us/coronavirus-louisiana-federal-inmate-death-prison-virus-outbreak
⁷https://www.bop.gov/coronavirus/
⁸https://www.nytimes.com/2020/04/03/us/politics/barr-coronavirus-prisons-release.html

large sum of U.S. currency. Mr. Gillam's eyes were red and glossy, and he was observed to be lethargic and dazed. Mr. Gillam was asked to exit his vehicle. Bloss requested a K-9 unit respond to the scene. While waiting for the K-9 unit to respond, it was determined that Mr. Gillam was impaired, and that he would not be allowed to continue driving. Once at the scene, the K-9 alerted to the driver's door of the vehicle. Following detention, Mr. Gillam was attacked at CCA leading to more medical complications.

Officers conducted a search of the vehicle. Officers found tow clear vacuum sealed bags containing 893 grams of methamphetamine, located under the driver's seat of the vehicle. A large sum of U.S. currency was found inside a bank deposit bag found on the driver's seat. Mr. Gillam was arrested. Officers found $3,674 in Mr. Gillam's pants pocket.

Mr. Gillam submits that the above offense was non-violent. Further, Mr. Gillam has accepted guilt herein, as evidenced by his guilty plea, and is focused on his rehabilitation, so that he does not become engaged in criminal activity in the future. In accord with such actions and desires, Mr. Gillam submits that he understands that he must serve a sentence, and he has accepted his punishment and is currently serving said punishment, a 96-month sentence. However, Mr. Gillam does not wish to have his health, or his life, jeopardized by exposure to the coronavirus while incarcerated. A 96-month sentence should not be a death sentence.

Mr. Gillam acknowledges the seriousness of the above actions. However, Mr. Gillam notes that he has been incarcerated in this matter since 2017. The fact that several many years have been spent incarcerated serves to have statistically reduced the chances of recidivism should Mr. Gillam be released due to the coronavirus pandemic. According to the United States

---

[9] Id.

Sentencing Commission, "[r]ecidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% overage 50, lessening the need to protect the public from further crimes of the defendant under 3553(a)(2)(C). See, United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines.[10] There can be little doubt that Mr. Gillam is unlikely to continue involvement in criminal activity when released in this matter, given that he is now over forty years of age.

Mr. Gillam has the ability to live with his family who have strongly supported him throughout the pendency of his case. His family is capable of providing any support for Mr. Gillam that he is unable to provide for himself including medical care. Mr. Gillam will abide any terms this Court deems appropriate for compassionate release including in-home monitoring, intensive supervision including drug testing and will seek appropriate employment for his condition should he be allowed to do so by the Court.

**WHEREFORE**, in consideration of the foregoing, Mr. Gillam respectfully prays that this Court issue an Order granting immediate compassionate release.

---

[10] available at ussc.gov/publicat/Recidivism_General.pdf

Respectfully submitted,

/s/ David A. Kelly

_____
David A. Kelly, Esq. (MO#45983)
Attorney for the Defendant
114 Southwest Third Street
Lee's Summit, Missouri 64063
(816) 347-1818
(816) 347-1854 (facsimile)
Dave@mokanlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Motion with the United States District Court for the Western District of Missouri by using the CM/ECF system on this 29th day of May, 2020, constituting delivery upon the Office of the Assistant United States Attorney, Jeffrey Quinn McCarther, jeffrey.mccarther@usdoj.gov.

/s/ David A. Kelly

_____
David A. Kelly, Esq (MO#45983)
Attorney for the Defendant
114 Southwest Third Street
Lee's Summit, MO 64063
(816) 347-1818
(816) 347-1854 (facsimile)
Dave@mokanlegal.com