IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PRESTON L. GILLAM, <br><br> Defendant. | Case No. 17-00330-01-CR-W-SRB |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S SECOND PRO SE MOTION TO REDUCE SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) – COMPASSIONATE RELEASE**

The United States of America, through Teresa A. Moore, Acting United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to Defendant Preston L. Gillham's second motion for compassionate release. This Court previously denied Defendant's first motion for compassionate release due to Defendant presenting "no extraordinary and compelling reason to modify [his] sentence." *See* Doc. 57.

Defendant again seeks to have his 96-month sentence for Possession with Intent to Distribute Methamphetamine, under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), reduced to time served. *See* Doc. 54. Defendant argues extraordinary and compelling reasons exist because of his various medical conditions. *See generally* Doc. 62. Because Defendant has not demonstrated extraordinary and compelling reasons justifying a reduction, the Government opposes the request and asks the Court to deny Defendant's motion.

**I.      Procedural History**

On October 26, 2017, Defendant was charged by indictment with one count of possessing with intent to distribute approximately 895 grams of a mixture or substance containing

methamphetamine. *See* Doc. 10. On March 21, 2018, Defendant pleaded guilty to the Indictment. *See* Doc. 35. On June 5, 2019, Defendant was sentenced to 96-months' imprisonment. *See* Docs. 51 & 52. Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant's release date is July 26, 2024. *See* https://www.bop.gov/inmateloc/.

On May 29, 2020, Defendant filed his first motion for compassionate release and asserted that the current situation regarding the coronavirus (COVID-19) placed the defendant at risk if he remained in custody. *See generally* Doc. 54. The Government responded in opposition. *See generally* Doc. 55. This Court denied his Motion based on Defendant presenting "no extraordinary and compelling reason to modify [his] sentence." *See* Doc. 57. On April 26, 2021, Defendant filed his second motion for compassionate release and asserts that he should be released. *See* Doc. 62. For the same reasons before, Defendant's motion should be denied.

## II.     First Step Act

The First Step Act, effective December 21, 2018, provides inmates the ability to file a motion for compassionate release, an ability previously only vested in the BOP. The statute, 18 U.S.C. § 3582(c)(1)(A), originally permitted judicial relief only upon a motion by the Director of the BOP. Section 603(b) of the First Step Act now permits courts to act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent

with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). (U.S.S.G. § 1B1.13(2).) The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP. (§1B1.13 Commentary n.1(D).)

The Government acknowledges that Courts are divided on the applicability of U.S.S.G. § 1B1.13 when a motion for compassionate release is brought directly by an inmate under the First Step Act, rather than a motion by the Director of the BOP. This division is, at least in part, because the text of § 1B1.13 is tailored to motions specifically brought by the BOP, and the Guideline has not been updated or revised since 18 U.S.C. § 3582(c) was amended to allow inmates to bring motions on their own behalf. Compare *United States v. Warren*, 456 F.Supp.3d 1083, 1084-86 (D. Minn. Jan. 1, 2020), with *United States v. Jones*, 2020 WL 6817488, at *6-9 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). *See also United States v. Gunn*, 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020).

The Eighth Circuit has not yet decided this issue. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."). However, while it remains undecided within the Eighth Circuit whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate, and

therefore whether Courts consider whether the defendant remains a danger to the community, § 3582 still requires the Court to consider the § 3553(a) factors, one of which is "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Further, the Government submits even if not found to be applicable, § 1B1.13 is at the very least instructive on the pertinent issues of a motion for compassionate release. *See United States v. Pelichet*, 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe,* 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.").

As the proponent of a motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review—*i.e.*, that they have "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2)

4

movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").[1]

### III. BOP Response to the Coronavirus Pandemic[2]

The BOP has taken significant measures to protect the health of all inmates. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts at the Centers for Disease Control (CDC), and in accordance with guidance from the World Health Organization (WHO). The BOP has implemented preventive and mitigation measures including:

- **Modified Operations:** The BOP has implemented modified operations to maximize social distancing in all facilities. Inmates are limited in their movements to prevent congregate gathering. Essential inmate work details, such as Food Service, continue to operate with appropriate screening.

- **Screening of Inmates and Staff:** All newly-arriving BOP inmates are screened by medical staff for COVID-19. The screening includes a symptom screen, a temperature check, and an approved viral PCR test. Inmates who arrive symptomatic and/or test positive are placed in medical isolation. Inmates who arrive asymptomatic and test negative are placed in quarantine for at least 14 days, and are tested before entering general population. Enhanced health screening of staff, contractors, and other visitors is performed at all BOP locations.

- **Social Visits:** Until recently all social visits were suspended. In accordance with specific guidance designed to mitigate risks, the BOP is now reinstating social visits, where possible to maintain the safety of all staff, inmates, and visitors. All visits are non-contact and social distancing between inmates and visitors is enforced. Visitors are symptom screened and temperature checked, and inmates and visitors must wear appropriate face coverings, in addition to taking other hygiene precautions. Tours continue to be suspended.

---

[1] The United States concedes Defendant has met the standards for exhaustion in his case.

[2] Though Defendant does not directly contend the Coronavirus pandemic plays a role in his motion for release, the efforts of BOP in this regard are somewhat relevant to his other medical circumstances.

- **Legal Visits:** Telephone calls and/or video conferencing with outside counsel is accommodated to the extent possible. In-person legal visits are accommodated upon request, based on local resources, and face coverings are required.

In addition, the BOP has begun administering vaccines to inmates and staff and is committed to doing so as quickly as possible. To date, nearly 127,000 doses have been administered. Further details regarding the BOP's COVID-19 action plan and efforts, and a daily updated resource page are available at: https://www.bop.gov/coronavirus/index.jsp.[3]

Taken together, these measures are designed to mitigate the risks of COVID-19 transmission in BOP institutions. BOP professionals continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately, inmates have become ill, and there have been COVID-19 outbreaks at several institutions. Notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider other factors, including the availability of transportation for inmates, and of supervision of inmates once released.

In addition, the Attorney General has directed that the BOP prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to

---

[3]According to the resource page, due to the rapidly evolving nature of this public health crisis, the BOP will update the dashboard daily at 3:00 p.m., based on the most recently available data from across the agency as reported by the BOP's Office of Occupational Health and Safety.

COVID-19 based on CDC risk factors, and the BOP is devoting all available resources to executing that directive. On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances concerning *every* inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons,[4] to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). To date, the BOP has placed nearly 24,000 inmates on home confinement. *See* https://www.bop.gov/coronavirus/.

In this case, even absent any concern related to the pandemic, Defendant's multiple medical conditions do not place him in a high-risk category that would establish an extraordinary or compelling reason for a sentence reduction. *See* Doc. 62 at 6-11 (Defendant's discussion of 10 medical factors).

**IV.    The Defendant Has Not Identified Extraordinary and Compelling Reasons**

To be entitled to compassionate release, the Court must find that the defendant has demonstrated that "extraordinary and compelling reasons warrant such a reduction," that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and only "after considering the factors set forth in section 3553(a)." 18 U.S.C. 3582(c)(1)(A)(i).

---

[4]On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion.

In *United States v. Jones,* the Sixth Circuit provided a three-step test a district court should follow when reviewing motions for compassionate release. 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). "At step one, a court must find whether extraordinary and compelling reasons warrant a sentence reduction. At step two, a court must find whether such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission … At step three, § 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id* (internal quotations and citations omitted).

The Sentencing Commission's pertinent policy statement related to extraordinary or compelling reasons appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Because the Eighth Circuit has not yet decided the applicability of § 1B1.13 as it relates to motions brought directly by inmates, the Government argues that it should still be considered. The BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. Courts have frequently upheld the BOP's discretionary authority in its management duties over federal prisoners. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs].").

The Eighth Circuit has not yet decided whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate. Nonetheless, the Application Notes for

8

§ 1B1.13 are instructive and provide guidance for the Court when determining whether the defendant has demonstrated an extraordinary and compelling reason for a sentencing reduction. *See United States v. Gunn,* 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive."); *United States v. Pelichet*, 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe,* 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.")

### A. Medical Condition of Defendant

The application notes for U.S.S.G. § 1B1.13 define medical condition of the defendant as:

> Medical Condition of the Defendant.--
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

>> (ii) The defendant is--
>
>> (I) suffering from a serious physical or medical condition,
>
>> (II) suffering from a serious functional or cognitive impairment, or
>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 Application Note 1(A).

In this case, Defendant alleges multiple medical conditions. *See* Doc. 62 at 6-11. Defendant, however, has made an inadequate showing of extraordinary and compelling circumstances. There is no evidence that he is unable to provide self-care or perform daily living activities. Unfortunately, Defendant's circumstance is not extraordinary in the context that many individuals across the nation are in the same or similar position as Defendant, and Defendant's medical condition remains the same whether he is released. While the Government is attune to the difficulties facing inmates, this particular instance simply fails to meet the requirements of the law and policy.

Defendant has failed to sustain his burden to prove that he meets the requirements for compassionate release or a reduction of sentence. Defendant does not have a terminal illness/suffer from any physical or mental condition that substantially diminishes her ability to provide self-care within the correctional facility, etc. There are no extraordinary and compelling reasons, as those terms are defined for the purpose of 18 U.S.C. § 3582(c)(1)(A), justifying compassionate release or any form of sentence reduction in this case.

B.  **Family Circumstances**

The application notes for U.S.S.G. § 1B1.13 define family circumstances as:

Family Circumstances.--

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 Application Note 1(C).

In this instance, the defendant's family circumstances, the incapacitation of his mother, does not meet the existence of a family circumstance that would warrant a reduction in sentence under 18 U.S.C. § 3582(c), or as set forth in the Commission's policy statement. While the Government is attune to the difficulties facing families of inmates, this particular instance simply fails to meet the requirements of the law and policy. 18 U.S.C. § 3582(c) does not allow a court to modify a term of imprisonment absent extraordinary and compelling reasons that warrant such a reduction. The circumstances here do not rise to such a standard, and Defendant's request does not meet the requirements for release.

V.  **Defendant Remains a Danger to the Community**

This Court may not reduce Defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. Defendant is a danger to the community, and should not be considered for compassionate release.

Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the

defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that this defendant is not a danger to the safety of any other person or the community. Nothing about the COVID-19 pandemic reduces the defendant's danger to others.

At the time of his sentencing in this case, Defendant's criminal history was over 25 years long. *See* Doc. 38 (PSR) at §§ 29-37. Including his most recent felony, Defendant has been convicted of 10 felonies and 6 misdemeanors, including stealing, assault with brass knuckles, resisting arrest, and multiple drug trafficking felonies – including for possession of methamphetamine and methamphetamine-precursors. *See id.*

Defendant has failed to demonstrate that the § 3142(g) factors the Court considered at the time of detention or the § 3553(a) factors the Court considered at the time of sentencing have changed, therefore the Court should deny Defendant's motion for immediate release.

## VI. Record of Rehabilitation Is Not An Extraordinary and Compelling Reason

Finally, Defendant asserts he has demonstrated a record of rehabilitation, and the Government does not dispute that the accomplishments Defendant has made in prison, as listed and documented in his motion, are laudable. *See* Doc. 62 at 12. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for a reduction of a term of imprisonment. U.S.S.G. § 1B1.13 Commentary n.3; 28 U.S.C. § 944(t).

12

## CONCLUSION

Based on the foregoing, the Government respectfully requests that Defendant's motion for compassionate release be denied.

Respectfully submitted this 10th day of May, 2021.

        Teresa A. Moore
        Acting United States Attorney

By   /s/Jeffrey Q. McCarther

        Jeffrey Q. McCarther
        Assistant United States Attorney
        Violent Crime & Drug Trafficking Unit
        Charles Evans Whittaker Courthouse
        400 East Ninth Street, Suite 5510
        Kansas City, Missouri 64106
        Telephone: (816) 426-3122

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on May 10, 2021, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

        Preston Gillam, *Pro Se*
        Reg. No. 32461-044
        FCI Forrest City Medium
        Federal Correctional Institution
        PO Box 3000
        Forrest City, AR 72336

        /s/Jeffrey Q. McCarther
        Jeffrey Q. McCarther
        Assistant United States Attorney