## ORIGINAL REPLY TO THE GOVERNMENTS RESPONSE

May 24, 2021

## ATTENTION COURT CLERK

Please accept Preston L. Gillam, Prose, "Reply to Governments Response" enclosed in this

letter **"AS THE ORIGINAL" RESPONSE** to be filed under seal in the Honorable Judge

Stephen R. Bough's Court. (9-pages)

I had accidently sent through the United States Postal mail a copy of the

**(ROUGH DRAFT")** **The rough draft "is not" what I intended to submit to the court and**

**would like it to be discarded upon receipt of delivery.**

The Rough Drafts Identification Tracking number is:

- **EJ 882 245 432 US**

 If you have any questions, you can reach me at 573-578-4718

Thank you for your time,

Submitted by Sheryl Riddle this 24th day of May 2021 on behalf of Preston L. Gillam

5-24-2021

"ORIGINAL" REPLY to
Government's Response

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

UNITED STATES OF AMERICA

Case No. 4:17 CR-00330-SRB-1

vs.

PRESTON L. GILLAM

<u>REPLY IN SUPPORT OF MOTION FOR REDUCTION IN SENTENCE</u>

      The defendant, Preston L. Gillam *Prose*, hereby files his Reply in support of his Motion for Reduction in Sentence (Docket # 62). In further support of the Motion, Gillam would show the following:

1    In the Motion, Gillam demonstrates how he satisfies all requirements of 18 U.S.C. § 3582 CIA for a reduction in sentence.

2    As a reminder, those elements are (1) "exhaustion of administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility"; (2) consideration of "the factors set forth in section 3353(a) to the extent that they are applicable" ;(3) a finding that "extraordinary and compelling reasons warrant such a reduction"; and (4) a finding that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission". 18 U.S.C. § 3582(c)(1)(A).

3    The Government has responded in opposition to Gillam's' Motion *See* Docket # 63.

4    In this Reply, Gillam demonstrates how his medical circumstances have further changed since Gillam filed his Motion One year ago and responds to the arguments that the Government raises in its Response. But first, Gillam highlights again how the First Step Act expressed Congress's clear intent to use compassionate release more frequently and enacted a sea change with respect to empowering courts to do just that.

## I. THE FIRST STEP ACT DRAMATICALLY ALTERS THE AVAILABILITY OF COMPASSIONATE RELEASE IN FEDERAL COURTS

A. In The Governments response on Compassionate Release the Government responded as the Eight Circuit has not yet decided whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate.

B. Gillam opposes this response and request that this court apply The Rule of Lenity Doctrine requiring that those ambiguities in a criminal statute relating to prohibition and penalties (1B1.13) (3553a) and (3142g) be resolved in favor of his motion to resolve doubts in the enforcement.

5   Prior to the passage of the First Step Act, which amended 18 U.S.C. § 3582, "a sentencing court could only consider compassionate release upon a motion from the Director of the Bureau of Prisons." *United States v. Bellamy*, 2019 U.S. Dist. LEXIS 124219 at *2 (D. Minn. July 25, 2019). If the BOP decided to not seek that relief on behalf of an inmate, there was no mechanism for review. *Id.* at *2-3.

6   Even before the passage of the First Step Act, in response to criticism that BOP was not using compassionate release procedures frequently enough, the United States Sentencing Commission "passed amendments to the federal sentencing guidelines that strengthened and broadened the criteria for compassionate release." *Id.* at *3 (internal quotation and citation omitted). That was in 2016. *Id.*

8   In December of 2018, Congress passed the First Step Act, which the President signed into law, "further expanding defendants' access to relief." *Id.*

9   The section of the First Step Act that expanded compassionate release was entitled "Increasing the Use and Transparency of Compassionate Release." The First Step of Act of 2018, 115 P.L. 391, 132 Stat. 5194.

10  Courts across the nation have recognized that it was the specific intent of Congress to expand compassionate release so that it is used more frequently. *See, e.g.,*

> *United States v. Bellamy*, 2019 U.S. Dist. LEXIS 124219 at *3 (D. Minn. July 25, 2019);
> *United States v. Sotelo*, 2019 U.S. Dist. LEXIS 135051 at *32 (E.D. Pa. Aug. 7, 2019);
> *United States v. Willis*, 2019 U.S. Dist. LEXIS 95783 at *3 (D.N.M. June 7, 2019);
> *United States v. Beck*, 2019 U.S. Dist. LEXIS 108542 at *15-16 (M.D.N.C. June 28, 2019);
> *United States v. Johns*, 2019 U.S. Dist. LEXIS 107850 at *2-3 (D. Ariz. June 27, 2019);
> *United States v. Cantu*, 2019 U.S. Dist. LEXIS 100923 at *10 (S.D. Tex. June 17, 2019);
> *United States v. Brown*, 2019 U.S. Dist. LEXIS 175424 at *8 (S.D. Iowa Oct. 8, 2019

11  Several courts have explicitly referenced the title and heading of the changes to compassionate release laws to highlight the sea change created by the First Step Act. *See, e.g., United States v. Brown*, 2019 U.S. Dist. LEXIS 175424 at *7-9 (S.D. Iowa Oct. 8, 2019) (noting that the title "Increasing the Use and Transparency of Compassionate Release" was "especially valuable" in evaluating Congress's intent, particularly in light of BOP's long history of rarely granting compassionate release petitions) (internal quotations and citations omitted); *United States v. Cantu*, 2019 U.S. Dist. LEXIS 100923 at *9-10 (S.D. Tex. June 17, 2019).

12  The *Brown* court found that Congress's intent to increase the frequency of compassionate release is also made clear by the fact that the changes enacted by the First Step Act were passed even after BOP began using compassionate release more following complaints from the Inspector General.1 *United States v. Brown*, 2019 U.S. Dist. LEXIS 175424 at *8 (S.D. Iowa Oct. 8, 2019). "Since Congress still amended the program following this increase, one can infer Congress thought eighty-three [grants of compassionate release over a 13-month period] was still insufficient." *Id.*

13  To implement this desire to increase the use of compassionate release, Congress removed BOP as the sole authority over compassionate release and empowered federal trial court judges across the nation to conduct *de novo* review of such requests. *See United States v. Beck*, 2019 U.S. Dist. LEXIS 108542 at *34 (M.D.N.C. June 28, 2019) ("[T]he terms of the First Step Act give courts independent authority to grant motions for compassionate release and says nothing about deference to BOP, thus establishing that Congress wants courts to take a *de novo* look at compassionate release motions."); *See also United States v. Sotelo*, 2019 U.S. Dist. LEXIS 135051 at *22 (E.D. Pa. Aug. 7, 2019); Erica Zunkel, *18 U.S.C. § 3553(a)'s Undervalued Sentencing Command: Providing a Federal Criminal Defendant with Rehabilitation, Training, and Treatment in "the Most Effective Manner," 9 Notre Dame Journal of International Law 49, 61 (2019)* ("The First Step Act aims to increase 'the use and transparency of compassionate release' by broadening eligibility and removing sole discretion for determining who is eligible for compassionate release from the BOP.")

14  The decision in *Brooker additionally* made clear that a court may consider "the injustice of a defendant's lengthy sentence" in deciding a motion for compassionate under section 3582. *Id.* at 238; *see also United States v. Vargas*, 2020 U.S. Dist. LEXIS 220531, at *13 (S.D.N.Y. Nov. 24, 2020) (collecting cases and noting that "courts have considered the severity or length of a defendant's sentence as part of their evaluation" under section 3582); *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (affirming district court's consideration of severity of sentence as  proper grounds for release under section 3582).

15  In considering whether a sentence is unjustly lengthy, courts have considered disparities between similarly situated codefendants, among other factors. *See, e.g., United States v. Haynes*, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020) (considering "drastic severity" of sentence as compared to codefendants' term); *see also United States v. Millan*, 2020 U.S. Dist. LEXIS 59955, at *27 (S.D.N.Y. Apr. 6, 2020) (granting motion for release in part to avoid sentencing disparity between defendant and co-defendants).

16 Courts have additionally recognized the high risk of spread of Covid-19 in a prison
environment, whereas Gillam has been forced to live in close quarters without the
ability to social distance, no access to hygienic products such as hand
sanitizer. *See, e.g., United States v. Park,* 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020)
("the nature of prisons...puts those incarcerated inside a facility with an outbreak at
heightened risk"); *see also* The Marshall Project, *A State by State Look at*
*Coronavirus in Federal Prisons,*
https://www.themarshallproject.org/2020/12/18/1-in-5-prisoners-in-the-u-s-has-
had-covid-19 (finding that since the outbreak of the virus, "at least 2,019...prisoners
have died of coronavirus-related causes").
Two people at Forrest City have died from COVID-19 this year alone.

## II.  GILLAMS MEDICAL CONDITIONS HAS CHANGED SINCE FILING ONE YEAR AGO

17 Mr. Gillam's conditions of incarceration have changed from over one year ago on May 29,
2020, when Gillam's First requested Compassionate Release Docket #54. Mr. Gillam has
since contracted the Corona Virus, his respiratory breathing has worsened, one side of his
nasal bone has collapsed, he has exhibited difficulties with his memory, and he has paraplegic
loss of use in his left arm and hand. Gillam has had no medical treatment only x-rays of his left
arm, after many requests to medical for these conditions and others explained further in this
motion.

18 Gillam contracted the Corona Virus (COVID-19) and since Gillam gets winded with little to
no exertion, he is fatigued were he now takes naps throughout the day, Periodically, his heart
will start to speed up and pound, sweats come on out of nowhere and he has bouts of anxiety.
Gillam's medical conditions as to his Respiratory Failure, Injury to his lungs and Traumatic
Brain injury falls under the CDC's as High Risk to complications from COVID-19

19 **The Department of Justice ("DOJ")** Has taken the position that inmates who suffer from a condition identified by the Center for Disease Control and Prevention ("CDC") as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an "extraordinary and compelling reason" to be considered for compassionate release—even if that condition in ordinary times would not meet the terms of the policy statement. See U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I). People with <u>chronic lung disease</u> or moderate to severe asthma • People who have serious heart conditions • People who are immunocompromised • Wise v. United States, No. 1:18-cr-72, Doc. No. 185 at 1-2 (D. Md. May 22, 2020) (https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-490351)

## III. REPLY TO GOVERNMENT'S RESPONSE AS
20 EXHAUSTION

**A.** Gillam demonstrates in the Motion how he meets the exhaustion requirement. The Government has agreed that contention, so it has been admitted.

21 **Application of Applicable Section 3553(a) Factors**

Gillam shows in the Motion how the applicable factors in 18 U.S.C. § 3553(a) favor the requested reduction in sentence. *See* Docket #62, pp.11-13 In its Response, the Government has not specifically contested any of those factors only that Gillam has not shown that the 3142(g) and the 3553(a) factors the Court considered at the time of sentencing has changed and a Record of Rehabilitation is not an Extraordinary and Compelling reason.

Please see Gillam's Presentence Investigation Report objections that were withdrawn by Gillam's first attorney Flanagan in 2018 against Gillam's will and knowing that was submitted with Motion Docket #62 PSI attachment.

22 Gillam asserts that he has demonstrated a record of rehabilitation. The Government has agreed that contention, so it has been admitted. See Doc. 62 at 12.

## IV.   THE GOVERNMENT REPLYS THAT GILLAMS MEDICAL CONDITIONS REMAINS RATHER HE BE IN PRISON OR OUT OF PRISON

23  Mr. Gillam opposes the Governments argument; The difference; If Gillam were out of prison, he can get medical treatment that is needed.  Leaving Gillam to remain in prison continues to place Gillam in harm's way by, subjecting him to unwarranted risks of being a totally paralyzed with his chronic progressive Degenerative neurological diseases and Obstructive and restrictive lung conditions ( Respiratory Failure and recent lung injury of collapsed lungs), his Traumatic Brain Injury and recent cranial fracture injuries)

## V.   The Federal Bureau of Prisons Clinical Guidance updated June 2019.
### Compassionate Release Criteria for inmates with Medical Conditions.

24  The following are examples of medical conditions that are permanent, progressive, an ordinarily related to diseases associated with aging such conditions includes but are not limited to. the following:

- Atherosclerotic cardiovascular disease
- Obstructive and restrictive **lung disease**
- Chronic liver failure with recurring ascites
- Dementia is such as Alzheimer's disease, Lewy body dementia, front to temporal dementia.
- **Degenerative Neurological Diseases** "such as" ALS, Parkinson's disease, Huntington's disease, certain forms of Multiple Sclerosis, and stroke with residue neurological deficits.
- **Severe Chronic Pain** that persists despite optimal medical or surgical management
- Rheumatologic conditions that has progressed to deformity such as rheumatoid arthritis gout an **ankylosing spondylitis.**
- Diabetes either type one or type 2, with established retinopathy, nephropathy or peripheral neuropathy
- Severe musculoskeletal degeneration such as end Osteoarthritis.

HTTP://WWW.BOP.GOV/RESOURCES/HEALTH_CAREMNGMT.JSP

Case 4:17-cr-00330-SRB   Document 64   Filed 05/26/21   Page 9 of 11

### Degenerative Neurological Diseases

25 Mr. Gillam suffers from Degenerative Cervical Stenosis Myelopathy and Spondylosis Osteoarthritis **Cervical Spinal Stenosis** occurs when the neck's protective spinal canal narrows due to degenerative **Spondylosis** changes or trauma. If the space within the spinal canal is reduced too much, **Neurologic Deficits** can result from spinal cord compression, a condition called myelopathy. **Myelopathy** describes as any **Neurologic Symptoms** related to the spinal cord and is a serious condition.

If untreated, this can lead to <u>significant and permanent nerve damage including paralysis and death.</u> There is no cure for this debilitating disease and requires a person to be medically monitored on a quarterly basis through diagnostic imaging and physical assessments by a spinal specialist due by to the progression of the disease and serious side effects that comes with it.

26 Mr. Gillam needs cervical surgery to address the failed artificial disc that is causing unwarranted pain and further injury to Gillam's spinal canal. See Docket# 62 pp. 6-11

27 The Bureau of Prisons has been indifferent to Gillam's medical needs which some ensue from injuries he sustained in 2019 while under BOP's care. Mr. Gillam's family have provided the BOP with Medical Records and have written requests affirming that he needs medical treatment, and the BOP will not even acknowledge those requests along with Gillam's dozens of sick call request. These impairment "substantially diminishes the ability of Gillam to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." "Breathing is a necessity to be able to sustain life". To be denied medical care and your condition to be downgraded as a simple sinus infection then told "they do not treat sinus infections" is unacceptable. The BOP has knowledge of Gillam's medical conditions and to leave Mr. Gillam in prison greatly poses unwarranted distress and risks to his health and life.

8 of 9

## Conclusion

For the foregoing reasons, Mr. respectfully asks that the Court grant him a reduction in sentence to time served and amend the conditions of supervised release where he can get the medical help that he needs.

Respectfully Submitted through the United States Postal Service this 24th day of May 2021.

I declare under penalty and perjury that the facts stated in this Motion prepared by Sheryl Riddle on behalf of Preston Gillam are true and correct.

Sheryl Riddle

*Sheryl Riddle*

Preston L. Gillam

*Preston Gillam Prose*